# EXHIBIT "A"

2826651_1

# Commonwealth of Massachusetts

TRIAL COURT OF THE COMMONWEALTH
EASTERN HOUSING COURT DEPARTMENT

_Charlina Mitchell_
**PLAINTIFF(S),**

**Civil No.**

**SUMMONS**

v.

_Revere Housing Authority_
**DEFENDANT(S)**

THIS SUMMONS IS DIRECTED TO _Revere Housing Authority (Directed to Dean Harris)_
(Defendant's name)

1.      **This Notice is to inform you that you are being sued.** The person or business suing you is known as the Plaintiff. A copy of the Plaintiff's Complaint against you is attached and the original has been filed in the Eastern Housing Court. You must respond to this lawsuit in writing. If you do not respond, the Plaintiff may obtain a court order requiring you to pay money or provide other relief.

2. **You must respond within 20 days to protect your rights.** In order to protect your right to defend yourself in this lawsuit, you must deliver or mail a written response called an "Answer" to <u>both</u> the Clerks Office, Eastern Housing Court, 24 New Chardon Street 3rd Floor, Boston, MA 02114" <u>and</u> to the individual below:

     _Alan Minuskin and Ed Rice_
at _Boston College Legal Services LAB, 885 Centre Street, Newton Centre, MA 02459_
(name of Plaintiff or Plaintiff's attorney)                                   (address)

Case 1:23-cv-13124-MJJ **Your Answer** must be delivered or mailed within 20 days from the date the Summons was delivered to you. If you need more time to respond, you may request an extension of time in writing from the Court.

3. **Your Answer must respond to each claim made by the Plaintiff.** Your Answer is your written response to the statements made by the Plaintiff in the Complaint. In your Answer you must state whether you agree or disagree with each paragraph of the Complaint. You may agree with some of the things the Plaintiff says and disagree with other things. You may also say that you do not know whether on (or more) of the statements made in the Plaintiff's Complaint is true. If you want to have your case heard by a jury, you must **specifically** request a jury trial in your Answer. Even if you agree that you owe what is claimed, sending an Answer will provide you with an opportunity to participate and explain your circumstances.

4. **You must list any reason why you should not have to pay the Plaintiff what the Plaintiff asks for.** If you have any reason(s) why the Plaintiff should not get what the Plaintiff asks for in the Complaint, you must write those reasons (or "defenses") in your Answer.

5. **You may lose this case if you do not send an Answer to the Court and the Plaintiff.** If

you do not mail or deliver the Answer within 20 days, you may lose this case. You will have no opportunity to tell your side of the story and the Court may order that the Plaintiff receive everything requested in the Complaint. The Court may allow a motion permitting the Plaintiff take your property and/or wages. If you respond to the Complaint and appear at the hearing, you will get an impartial hearing by a judge. Even if you choose to discuss this matter with the Plaintiff (or the Plaintiff's lawyer), you should still send your Answer **within 20 days.** Even if you file an Answer, you can still reach an agreement with the Plaintiff.

6. **Legal Assistance.** You may wish to get legal help from a lawyer. **If you cannot get legal help, you must still provide a written Answer to protect your rights or you may lose the case.** You may also obtain information at www.mass.gov/courts/selfhelp.

7. You can also sue the Plaintiff. If you believe the Plaintiff owes you money or has harmed you in some way related to the lawsuit, you must describe that in your Answer. If you do not include these claims (called "Counterclaims") in your written response, **you may lose your ability to sue the Plaintiff** about anything related to this lawsuit.

8. **You or your attorney must attend all court hearings.** If you send your Answer to the Court and the Plaintiff, you will protect your rights. The Court will send you a notice telling you the date, time, and place of an impartial hearing before a judge. The judge will hear **both** sides of any arguments and schedule any additional hearings.

9. The civil number appearing on the front of this notice is the case docket number and must appear on the front of your Answer.

Witness Hon. Joseph E. Kelleher III, Acting First Justice on December 6 , 20 23 .

(SEAL)

_____
Clerk Magistrate

Note: The number assigned to the Complaint by the Clerk Magistrate at the beginning of the

Case 1:23-cv-13124-MJJ   Document 1-1   Filed 12/19/23   Page 3 of 76

## RETURN OF SERVICE
(for use by person making service)

Motion for Preliminary and Injunction

On December 6 , 20 23 , I served a copy of the within summons, together with a copy of the Complaint in this case, upon the named defendant in the following manner:

☐ Last and usual at (address)

_____

☐ In hand

☑ Other by certified mail to Dean Harris, Executive Director Revere Housing Authority 70 Coolidge Street, Revere, MA 02151

_Sophie Bonadeo_
(signature)

_Sophie Bonadeo, student attorney (SJC 3:03)_
(name and title)

_885 Centre Street, Newton Centre, MA_
(address) 02459

**Please place date you make service in this box and on copy served on defendant and return original to this Court:**

*If service is made at the last and usual place of abode, the officer shall forthwith mail first class a copy of the summons to such last and usual place of abode, and shall set forth in the return the date of mailing and the address to which the summons was sent. (GL. c. 223, ² § 31).

Rev. 11/4/2019

COMMONWEALTH OF MASSACHUSETTS
TRIAL COURT
HOUSING COURT DEPARTMENT

SUFFOLK COUNTY, SS     EASTERN DIVISION
             CIVIL ACTION No.

)
CHARLINA MITCHELL,    )
PLAINTIFF       )
          )
Vs.         )   PLAINTIFF'S VERIFIED COMPLAINT
          )
REVERE HOUSING AUTHORITY, )
DEFENDANT     )
          )

## INTRODUCTION

This is a complaint seeking judicial review of a final decision of the Revere Housing Authority terminating the Plaintiff, Charlina Mitchell's, Section 8 Voucher. This complaint is brought pursuant to M.G.L. c. 249, § 4; M.G.L. c. 151B § 4; 42 U.S.C. § 1983; and 42 U.S.C. § 3604.

## PARTIES

Case 1:23-cv-13124-MJJ   Document 1-1   Filed 12/18/23   Page 4 of 76

1. The Plaintiff, Charlina Mitchell (hereinafter the "Ms. Mitchell"), resides at 620 River Street, Apartment #3, Mattapan, Massachusetts 02126 (hereinafter "620 River Street") with her three children ages 19, 7, and 4. She is a participant of the Federal Housing Choice Voucher Program ("Voucher Program") through which she received a tenant-based voucher. Ms. Mitchell suffers from disabilities which have substantially interfered with one or more major life activities.

2. The Defendant, Revere Housing Authority ("RHA"), is a public body corporate and politic, established pursuant to M.G.L. c. 121B, §§ 3 and 5 as modified by St. 1989, c. 88, as

amended. RHA's offices are located at 70 Cooledge Street, Revere, Massachusetts 02151. RHA administers the Housing Choice Voucher Program on behalf of the United States Department of Housing and Urban Development ("HUD"), which includes administration of Ms. Mitchell's tenant-based voucher.

## JURISDICTION AND VENUE

3.  The Housing Court ("the Court") has jurisdiction pursuant to M.G.L. c. 185C, § 3, inasmuch as this action concerns public housing programs administered by RHA.

4.  This Court also has jurisdiction to grant declaratory relief under M.G.L. c. 231A, and to grant other appropriate relief under certiorari, M.G.L. c. 249 § 4.

5.  The Eastern Housing Court is the proper venue pursuant to M.G.L. c. 223, § 1, and M.G.L. c. 214, § 5, because Ms. Mitchell resides in Suffolk County and the Premises are within Suffolk County.

## PROCEDURAL HISTORY

6.  On or about May 30, 2023, Ms. Mitchell received from RHA a notice of Proposed Termination of her Section 8 Housing Voucher ("Voucher"). Vouchers are established pursuant to 42 U.S.C. § 1437f(o) and 24 C.F.R. Part 982. Public housing agencies ("PHAs") like RHA

are funded by HUD to provide housing assistance for eligible low-income families. A copy of this Notice of Proposed Termination is attached hereto as Exhibit A.

7.  As grounds for its proposed termination of her Voucher, RHA cited Ms. Mitchell's failure to provide certain information necessary for the annual recertification of the Voucher.

8.  On or about June 21, 2023, RHA issued another letter to Ms. Mitchell, informing her that her Voucher would be terminating on July 1, 2023.

9.  On or about July 5, 2023, Ms. Mitchell sent the recertification paperwork to RHA.

10. On or about July 6, 2023, Cindy Gonzalez, the Senior Leased Housing Coordinator at RHA and Ms. Mitchell's caseworker, received the recertification paperwork from Ms. Mitchell. Cindy Gonzalez sent an email confirming receipt of the paperwork but that it was incomplete. The email said that because the recertification was late, Ms. Mitchell needed to provide an appeal letter to reinstate her Voucher. A copy of this email is attached hereto as Exhibit B.

11. On or about July 11, 2023, RHA received a medical note from Ms. Mitchell's doctor, Dr. Victor A. Ferzoco. A copy of the medical note provided by Ms. Mitchell is attached hereto as Exhibit E.

12. On or about July 14, 2023, Ms. Mitchell requested an informal hearing opposing the termination of her Voucher. A copy of this request is attached hereto as Exhibit C.

13. On or about August 10, 2023, RHA held an informal hearing in response to Ms. Mitchell's request. The hearing was conducted via audio video conferencing. In attendance at the hearing were: Ms. Mitchell; Cindy Gonzalez; Julissa White, the Director of Senior Leased Housing at RHA; and Cindy White Overton, the Certified Hearing Officer ("Ms. White Overton").

14. Ms. Mitchell was not represented by counsel or anyone else at the informal hearing.

15. Despite the requirement in section 16.2.11 of the Department of Housing and Community Development's Administrative Plan (the "Administrative Plan"), that informal hearings be recorded, Ms. Mitchell's hearing was not recorded. A copy of section 16.2.11 of the Administrative Plan is attached hereto as Exhibit J.

16. At the informal hearing, Ms. Mitchell opposed the termination of her Voucher. Cindy Gonzalez and Julissa White also testified at the hearing.

3

17. RHA issued a written decision upholding the proposed termination of Ms. Mitchell's Voucher. The decision was signed by Ms. White Overton.

18. Although it is difficult to determine what documents were made part of the record of the hearing, from the face of the written decision and the documents attached, it appears that the items under consideration were multiple notices from RHA to Ms. Mitchell requesting recertification documents and documented communications between RHA and Ms. Mitchell. The only item considered in the record that was provided by Ms. Mitchell was the letter from her doctor explaining the medical difficulties and challenges she had been experiencing.

19. On or around August 28, 2023, Ms. Mitchell received a copy of the written decision upholding the proposed termination of her Voucher. This written decision is attached hereto as Exhibit F.

20. Ms. Mitchell is facing immediate and irreparable injury as a result of the termination of her Section 8 benefits, including eviction for nonpayment of rent.

21. Without reinstatement of Ms. Mitchell's subsidy, Ms. Mitchell and her three children are likely to become homeless.

## STATEMENT OF FACTS

### Ms. Mitchell's Household

22. Ms. Mitchell began receiving housing benefits through the Voucher Program in or around 2007.

23. Ms. Mitchell has been living at 620 River Street since 2017. She currently resides at this address with her three children, Demetrius Gooden (19), Kenneth Gooden (7), and Alan Gooden (4).

<u>Disability and Request for Reasonable Accommodation</u>

24. Ms. Mitchell is a person with disabilities, which include chronic lower back pain in the setting of lumbar disc disease and spinal stenosis, as well as chronic anxiety and depression.

25. Ms. Mitchell is under the care of Dr. Victor A. Ferzoco at Faulkner Community Physicians in Hyde Park. She is currently undergoing aggressive outpatient treatment at the Brigham and Women's Hospital Pain Clinic.

26. Ms. Mitchell has recently undergone two procedures to try and resolve the chronic lower back pain she suffers from, but the procedures and medications have not been able to adequately control her symptoms to meet the physical demands put on her at this time, as supported by a letter from Dr. Ferzoco (<u>Exhibit D</u>). She also attends physical therapy for her chronic lower back pain.

27. Dr. Ferzoco has prescribed Ms. Mitchell anti-depressants to help alleviate her chronic anxiety and depression. She was referred to and has met with a psychiatrist, Dr. Ahmed Makhlouf, to monitor her symptoms stemming from anxiety and depression.

28. At the time of recertification and the informal hearing from approximately April to August of 2023, Ms. Mitchell's chronic back pain, anxiety, and depression was beyond the reach of effective treatment.

29. As a result of these disabilities, Ms. Mitchell experienced during the above time period the following limitations on major life activities: walking, sitting down for extended periods of time, bending down, standing up, picking things up, taking care of her children, traveling, as well as experiences diminished focus and attention. Her diminished focus and attention, as well as her anxiety and depression resulted in an inability to meet deadlines.

Because of her disabilities, she is in debilitating pain every single day. This pain forces her to pay people to help her with simple tasks such as moving furniture because she is unable to do it herself.

30. In multiple communications with RHA, Ms. Mitchell provided information that formed the basis for a request of reasonable accommodation, including: On or around July 11, 2023, Ms. Mitchell sent RHA a medical note from her doctor, stating: "it is my medical opinion that her chronic behavioral and physical health conditions have significantly interfered with her ability to meet certain deadlines in terms of housing" (Exhibit E). On July 14, 2023, Ms. Mitchell sent Cindy Gonzalez and Julissa White a letter requesting an appeal of the termination of her Voucher. In the letter, Ms. Mitchell stated, "I have had an unfortunate amount of pain every day since I had a motor vehicle accident while I was 8 months pregnant with my son...I've tried my hardest to get relief of the pain not knowing how severe it has become" (Exhibit C). She said that her medical issues led to her untimely submission of the recertification paperwork, and that, "I have had allergic reactions to medications and had two procedures on my back and still don't have the relief needed to get my life back on track for me and my children's sake!" (Exhibit C). Finally, on August 10, 2023, during the informal

hearing, Ms. Mitchell experienced extreme anxiety and was under major stress. During the hearing, she told Ms. White Overton that "mentally, physically, and emotionally, I am a mess." She also told Ms. White Overton that she was "trying to pull it together" (Exhibit F).

31. The RHA failed to respond to any of the above requests for accommodation and did not engage in any interactive process with Ms. Mitchell as required by section 2.3.1 of its Administrative Plan. A copy of section 2.3.1 of their Administrative Plan is attached hereto as Exhibit I.

32. Ms. Mitchell has requested and continues to request reasonable accommodation of her disability in connection with the termination of her Voucher. Ms. Mitchell requests a reasonable accommodation because her disability prevented her from complying with the voucher program rules; chronic lower back pain in the setting of lumbar disc disease and spinal stenosis as well as chronic anxiety and depression practically paralyzed her and severely undermined her ability to engage in ordinary life activities. When experiencing flare ups of lower back pain, she is unable to walk around pain-free, sit still for a prolonged period, bend down, pick up her children, or take public transportation. In the spring and summer of 2023, these symptoms culminated in an inability to timely complete recertification of her Voucher. Because of constant pain limiting her daily life activities , she has undergone treatment at Faulkner Community Physicians at Hyde Park and has undergone two medical procedures on her back. While the first procedure, on March 1, 2023, seemed to help ease her pain, she experienced increased, intense pain for weeks following a second procedure on May 23, 2023,. During this time, the pain was so debilitating that she could barely get out of bed to get her young son dressed in the morning. She was struggling with with the worst of this intense pain after the second procedure, which was precisely the time that RHA was trying to contact her about recertifying her Voucher.

33. RHA was aware of Ms. Mitchell's disability and her negative reaction to her second procedure. Cindy Gonzalez spoke to Ms. Mitchell on the telephone on June 12, 2023, regarding the tardiness of her recertification paperwork. During this phone call, Ms. Mitchell informed Cindy Gonzalez that she was recovering from an intense negative reaction to a medical procedure but would send the recertification documents as soon as she could. Ms.

Mitchell sent the recertification documents to RHA when her intense back pain began to subside, and she regained some normalcy.

34. On or around July 6, 2023, after submitting the recertification documents, Ms. Mitchell received an email from Cindy Gonzalez confirming that RHA had received the recertification paperwork, but Ms. Gonzalez stated that it was incomplete. Ms. Gonzalez's email stated that Ms. Mitchell needed to request an appeal of the termination of her Voucher.

35. In the decision Ms. Mitchell received from RHA after the informal hearing on August 10, Ms. White Overton wrote: "Ms. Mitchell has testified that … she has health issues that have prevented her from complying with the requirements of the lease and HCV program. While HUD does not hold physical or mental health issues against a participant, they must be able to live independently within regulation and requirements, with the assistance of services or treatment. Neither Ms. Mitchell's testimony or the medical documentation indicted (sic) there would be a cure to the existing violations or reason to believe their (sic) will be improvement in this ongoing situation." The violations referred to in the decision were the failure to timely submit the recertification documents.

Communication Issues

36. Ms. Mitchell was unaware that RHA was struggling to contact her during the recertification period because she had been dealing with various telephone issues from April of 2022 until August of 2023. Her phone screen was damaged; cracks in the screen rendered her unable to see who called her, thus forcing her to miss calls. At some point, her phone stopped working altogether. She then had to switch her SIM card into her son's phone.

37. Ms. Mitchell informed RHA on multiple occasions that she was having trouble with her phone and provided them with people to contact if they could not reach her. These

8

occasions include: On April 28, 2022, Ms. Mitchell emailed her RHA caseworker at the time, Barbara Cruz, to inform her that she was having phone troubles and directed her to contact her son if she could not get ahold of Ms. Mitchell. A copy of the email Ms. Mitchell sent to Barbara Cruz regarding her telephone issues is attached hereto as <u>Exhibit D</u>. On her 2023 recertification paperwork, Ms. Mitchell wrote her brother's phone number on her recertification paperwork in case she could not be reached.

38. On or around August 7, 2023, Ms. Mitchell was gifted a new phone.

Eviction

39. On or around June 26, 2023, Ms. Mitchell received a thirty-day notice to quit from her landlord, Ross Wendell. While the Notice to Quit cited that it was no cause eviction, it also claimed that Ms. Mitchell owed $11,861 in unpaid rent. A copy of the Notice to Quit issued by Ross Wendell is attached hereto as <u>Exhibit G</u>.

40. On August 1, 2023, Ms. Mitchell was served with an eviction complaint from Mr. Wendell indicating that he was commencing eviction proceedings against her. A copy of the Summary Process Summons and Complaint issued by Ross Wendell is attached hereto as <u>Exhibit H</u>.

41. Ms. Mitchell will face immediate and irreparable injury if RHA does not reinstate her Voucher. Stable, predictable, and secure housing, coupled with her continued psychiatric and physical treatment, will help Ms. Mitchell's back injury and her depression and anxiety symptoms improve, eventually allowing her to live a pain-free and mentally healthy life. The absence of decent, sanitary housing would place Ms. Mitchell's already fragile health at serious risk, and her quality of life and mental health will only continue to deteriorate without a regular residence.

# LEGAL FRAMEWORK

42. An action under M.G.L. c. 249 § 4 may be commenced within sixty days after the proceeding complained of.

43. Under the Voucher Program, as established by 42 U.S.C. § 1437f(o) and 24 Part C.F.R. 982, public housing authorities ("PHAs") like RHA are funded by HUD to provide housing assistance for eligible low-income families. RHA is a state actor administering the Voucher Program under the color of law. As a PHA, its determinations are reviewable through an action in the nature of certiorari under M.G.L. c. 249 § 4 and through 42 U.S.C. § 1983 to the extent that RHA's actions do not provide constitutional due process or that RHA's actions were contrary to applicable federal law.

44. A PHA is required to afford a tenant of federally subsidized housing due process before terminating their benefits. *Wojcik v. Lynn Hous. Auth.,* 66 Mass. App. Ct. 103, 109; 845 N.E.2d 1160, 1166 (2006).

45. HUD Regulations require PHAs, such as RHA, to consider "all relevant circumstances," in determining whether to terminate an individual's section 8 voucher. 24 C.F.R. §982.552(c)(2)(i). Such consideration should include the "seriousness of the case" and "the effects of denial or termination of assistance on other family members who were not involved in the action or failure." 24 C.F.R. 982.552(c)(2).

46. HUD regulations further note that "if the family includes a person with disabilities, the PHA decision concerning such action is subject to consideration of reasonable accommodation." 24 C.F.R. 982.552(c)(2)(iv).

47. In addition to HUD regulations, M.G.L. c. 93 § 103, Amendment Article 114 of the Massachusetts Constitution, Title VIII of the Civil Rights Act of 1968, as amended in 1988 (the

10

Fair Housing Act, 42 U.S.C. §§ 3601-3619), Section 504 of the Rehabilitation Act (29 U.S.C. § 794), the Americans with Disabilities Act of 1990 (42 U.S.C. § 12010 et seq.), Title VI of the Civil Rights Act of 1964 (42 U.S.C. § 200d et seq.), and section 2.3.1 of the RHA's Administrative Plan collectively prohibit the discriminatory act of refusing a reasonable accommodation in rules, policies and practices when such accommodation may be necessary.

48. HUD regulations require that PHA's adopt an Administrative Plan establishing local policies for administration of the program consistent with HUD requirements, and the PHA must administer the program in accordance with the PHA Administrative Plan. 24 C.F.R. 982.54(a)(c).

49. DHCD's Administrative Plan states in section 16.2.11, "DHCD's designee will record and maintain an audio recording of all informal hearings. The designee may determine how to make the recording, but it must be possible to make a transcript from the recording, if necessary." Housing Choice Voucher Program Administrative Plan 16.2.11, Massachusetts Department of Housing and Community Development.

50. DHCD's Administrative Plan states in section 2.3.1, "If an applicant or participant indicates that an exception, change, or adjustment to a rule, policy, practice, or service is needed because of a disability, DHCD or its designee will treat the information as a request for a reasonable accommodation, even if no formal request is made. The applicant or participant does not need to say the words "reasonable accommodation." Housing Choice Voucher Program Administrative Plan 2.3.1, Massachusetts Department of Housing and Community Development.

51. The issuance of a written decision by a PHA by itself is not always adequate for a reviewing court to determine whether a hearing officer has fulfilled their legal obligations. In

Case 1:23-cv-13124-MJJ   Document 1-1   Filed 12/18/23   Page 14 of 76

*Costa v. Fall River Hous. Auth.*, the Court stated, "clearly, the hearing on termination of Section 8 assistance can be, and is intended to be, informal, and the procedural requirements applicable to it are designed to be flexible. Nevertheless, "[r]egardless of the statutory or regulatory scheme, and regardless whether the hearing is [formal] or informal, no reviewing court can determine whether a hearing officer has fulfilled his statutory or regulatory obligations in the absence of an adequate record." *Carter v. Lynn Hous. Auth.*, 450 Mass. 626, 636–37 n. 16 (2008); *See Costa v. Fall River Hous. Auth.*, 453 Mass. 614, 631–32, 903 N.E.2d 1098, 1114 (2009); *Cole v. Metropolitan Council HRA*, 686 N.W.2d 334, 338 (Minn.Ct.App.2004) ( "the overarching concern of the appellate court is that the record be sufficient to facilitate meaningful review").

52. HUD regulations note that "the complainant or the PHA may arrange, in advance and at the expense of the party making the arrangement, for a transcript of the hearing. Any interested party may purchase a copy of such transcript." 24 CFR § 966.56(e).

53. Under Housing Court Standing Order 1-04, the availability of a transcript or recording of administrative agency proceedings is presumed. Housing Court Standing Order 1-04 (2004).

54. A decision of whether to terminate Section 8 housing assistance benefits "because of action or inaction of a family member must involve a process in which the affected family at least has an opportunity to present evidence and arguments about circumstances that might move the decision maker to impose a penalty less severe than termination." *Wojcik*, 66 Mass. App. Ct. at 112; 845 N.E.2d at 1167.

55. When a hearing officer fails to give consideration to circumstances that might move the PHA to impose a less severe sanction, an individual's due process rights are denied. *See id.* at 1168.

56. In delivering a decision, the PHA hearing officer must issue a written decision which briefly states the reasons for the decision, and any factual determinations are based on a preponderance of the evidence. 24 C.F.R. § 982.555(e)(6).

57. M.G.L. c. 151B provides a state remedy when there is discrimination because of race, color, religious creed, national origin, ancestry, handicap, or sex.

58. 42 U.S.C. § 1983 provides a remedy for deprivation of any of the participant's federal rights by a PHA, including deprivation of rights guaranteed by the 14th Amendment of the U.S. Constitution or other statutory and regulatory rights.

59. 42 U.S.C § 3604 provides a federal remedy for discrimination faced by the participant in the sale or rental of housing.

## LEGAL CLAIMS

### COUNT I:
### DISCRIMINATION AND REASONABLE ACCOMMODATION
Case 1:23-cv-13124-MJJ   Document 1-1   Filed 12/18/23   Page 16 of 76
### UNDER M.G.L. C. 151B, § 4

60. RHA ignored Ms. Mitchell's requests for reasonable accommodation for her disabilities which is required by both HUD policies and Massachusetts law. Her disabilities resulted in an inability to timely provide RHA's requested documentation, what the RHA cites as their basis for the termination of her Voucher.

61. At her informal hearing, the officer failed to inquire further into Ms. Mitchell's references to her disability, and in failing to do so, the hearing officer erred.

62. At her informal hearing, the officer failed to properly consider Ms. Mitchell's disabilities, and in failing to do so, the hearing officer erred.

63. M.G.L. c. 231A, §§ 1 et seq. provide for declaratory and injunctive relief in this matter.

## COUNT II
## CERTIORARI UNDER M.G.L. C. 249, § 4

64. RHA's decision to terminate Ms. Mitchell's Voucher is reviewable through an action in the nature of certiorari under M.G.L. c. 249, § 4. Declaratory relief is available under M.G.L. c. 231A.

65. At her informal hearing, the officer failed to inquire further into Ms. Mitchell's references to her disability, and in failing to do so, the hearing officer erred.

66. At her informal hearing, the officer failed to properly consider Ms. Mitchell's disabilities, and in failing to do so, the hearing officer erred.

67. RHA's failure to record the informal hearing violates Housing Court Standing Order 1-04, which presumes the availability of a transcript of the proceedings. Housing Court Standing Order 1-04.

68. RHA's failure to record the informal hearing deprived Ms. Mitchell of her right to judicial review under M.G.L. c. 249 § 4, since the court may at any time after the commencement of the action issue an injunction and order the record of the proceedings complained of brought before it, but in this case, there is not a proper record for a reviewing court. *See Costa.*, 453 Mass. at 631–32.

14

<u>COUNT III</u>
<u>DEPRIVATION OF DUE PROCESS UNDER 42 U.S.C. § 1983</u>

69. 42 U.S.C. § 1983 provides a remedy for deprivation of any of Ms. Mitchell's federal rights by RHA, including deprivation of rights guaranteed by the 14th Amendment of the U.S. Constitution or other statutory and regulatory rights.

70. RHA deprived Ms. Mitchell of due process of law, in violation of federal law and the due process clause of the U.S. Constitution. RHA must provide due process before it denies applicants and participants of benefits, including Section 8 subsidies.

71. In deciding to uphold the termination of Ms. Mitchell's Voucher, RHA committed legal error in failing to properly consider any mitigating circumstances that would justify avoiding the termination, as required by 24 C.F.R. § 982.552(c)(2), or alternatives to termination.

72. The hearing officer's conclusory reasons for the findings fall short of the requirements set forth in 24 C.F.R. § 982.555(e)(6).

73. RHA denied Ms. Mitchell constitutional due process when it improperly terminated her Voucher based on the evidence presented at the hearing.

74. RHA's failure to record the informal hearing denied Ms. Mitchell constitutional due process because it hinders Ms. Mitchell's ability to effectively appeal RHA's decision, as is her right under 42 U.S.C. § 1983.

Case 1:23-cv-13124-WGY

## DISCRIMINATION UNDER 42 U.S.C § 3604

75. RHA failed to fulfill its reasonable accommodation obligations as required by Title VIII of the Civil Rights Act of 1968, as amended in 1988 (the Fair Housing Act, 42 U.S.C. §§3601-3619), Section 504 of the Rehabilitation Act (29 U.S.C. § 794), the Americans with Disabilities Act of 1990 (42 U.S.C. § 12010 et seq.), Title VI of the Civil Rights Act of 1964 (42 U.S.C. § 200d et seq.), and DHCD's Administrative Plan section 2.3.1. These statutes, in addition to the state laws, prohibit the discriminatory act of refusing a reasonable accommodation in rules, policies and practices when such accommodation may be necessary.

76. At her informal hearing, the officer failed to inquire further into Ms. Mitchell's references to her disability, and in failing to do so, the hearing officer erred.

77. At her informal hearing, the officer failed to properly consider Ms. Mitchell's disabilities, and in failing to do so, the hearing officer erred.

## PRAYERS FOR RELIEF

WHEREFORE, Ms. Mitchell requests that this Court grant her the following relief:

78. Reverse the termination of Ms. Mitchell's Voucher and reinstate her Voucher retroactive to the date of its termination;

79. In the alternative, remand this matter to the Revere Housing Authority for an administrative hearing to determine whether Ms. Mitchell's Voucher should be terminated.

80. If this matter is remanded to the Revere Housing Authority, reserve jurisdiction in case the outcome of the informal hearing is adverse to Ms. Mitchell, and provide for further judicial review of the outcome of the hearing;

81. Grant appropriate declaratory and injunctive relief under federal and state law; and

16

82. Grant such other relief as the Court may find necessary, proper, and in the interest of justice.

Dated: October 27, 2023

Respectfully submitted,
CHARLINA MITCHELL,
By her attorneys,

/s/ *Alan Minuskin*

_____
Alan Minuskin
Supervising Attorney
BBO # 348980
minuskin@bc.edu

/s/ *Sophia Bonadeo*

_____
Sophia Bonadeo (SJC Rule 3:03)
Boston College Legal Services LAB
885 Centre Street
Newton, MA 02459
617-552-0248 / bonadeo@bc.edu

## VERIFICATION

I, Charlina Mitchell, affirm that the facts stated above are true and accurate to the best of my information, knowledge and belief.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY:

Dated: October 27, 2023

/s/ *Charlina Mitchell*
CHARLINA MITCHELL

# EXHIBIT A

Case 1:23-cv-13124-MJJ   Document 1-1   Filed 12/18/23   Page 21 of 76

**ANTHONY PERRONE**
Chairman
Labor Representative

**DEAN HARRIS**
Executive Director



**GEORGE M. ANZUONI**
Vice-Chairman
State Appointee

**RICHARD VISCAY**
Treasurer

**FATOU DRAMMEH**
Member

**SECTION 8**
82 COOLEDGE STREET
REVERE, MASSACHUSETTS 02151
TEL: 781-284-1700
FAX: 781-286-8093/781-286-8094
www.reverehа.org

May 30, 2023

Charlina Mitchell
620 River Street  Unit: 3
Mattapan, MA 02126

Dear Charlina Mitchell:

This letter is to inform you that a review of your tenant-file indicates that you have failed to comply with the requirements of the Housing Choice Voucher Program. Specifically, you have failed to respond to your annual recertification letter April 1, 2023. Letters were also sent to you on May 2, 2023 and May 16, 2023 with no response. Several telephone calls were made to your residence as well.

Consequently, as the result of your failure to comply with the program requirements, your assistance may be terminated. The decision is based on 24 CFR 982.551(b). If you wish to appeal this decision, the request must be submitted to this office in writing within **seven (7) days from the date of this letter.** Your request should be directed to the undersigned and must clearly state the reason why you did not comply to the requirements of the housing choice voucher program.

If your request is not received within the time period indicated above, our decision to terminate your assistance will become final. This does not, however, constitute a waiver of your rights to appropriate judicial proceedings.

Sincerely,

*Cindy Gonzalez*

Section 8 Sr. Leased Housing Coordinator
Cc: Tenant
     Landlord



19

Case 1:23-cv-13124-MJJ   Document 1-1   Filed 12/18/23   Page 23 of 76

# EXHIBIT B

Cindy Gonzalez

From:          Cindy Gonzalez
Sent:          Thursday, July 6, 2023 1:11 PM
To:            chynalene@yahoo.com; Chynalene@gmail.com
Cc:            Julissa White
Subject:       Termination appeal/Annual recertification
Attachments:   Missing Paperwork20233706123418.pdf

HI Charlina Mitchell,

As we spoke today on the phone, I mentioned that I have received your recertification paperwork on July 5, 2023 this is after your recertification effective date and that in order for us to review your paperwork and your case we needed an appeal letter from you since your voucher has been terminated for not responding in a timely manner.

After reviewing what you submitted to us you have provided an incomplete recertification. (Please see attached form of missing documentation).

The following documents are required to complete your re-certification:

1. **Termination Appeal Letter**
2. **Demetrius income Verification 4 consecutive Paystubs for Sees Candies INC and offer letter.**
3. **Utility Bill**
4. **Landlord letter or rent receipt**

We had send numerous letter to you and you failed to respond back. I had to contact your brother to get an updated from you and he provided me with your phone number and we spoke on June 12 , 2023 at 10:33am, I informed you that your recent paperwork was overdue and that I needed it ASAP before we decided to terminate. You answered back saying that you have been at the hospital and you were having a hard time getting it back to us and that you had already sent it by mail, because we did not received your paperwork in a timely manner we proceeded with termination of assistance for family's failure to act.

Please provide appeal letter and missing documents as soon as possible.

Any questions you cab reach out to me.

Sincerely,

*Cindy Gonzalez*

Sr.Leased Coordinator
Revere Housing Authority
Dept. Section 8
*Revere, Ma 02151
Phone: (781) 284-1700 ext. 228
Fax: (781) 286-8093*

1

21

# EXHIBIT C



Chama Mitchell
620 River Street #3
Dorchester, MA 02126
Mattapan

Jaliso White
82 College Street
Revere, MA 02151
Revere Housing Authority

Case 1:23-cv-13124-MJJ   Document 1-1   Filed 12/15/23   Page 26 of 76

JUL 17 PM4:42

JUL 14 2023
MATTAPAN, MA 021xx
USPS

02151£2353 CC20

Jalissa white

82 Coolege street revere ma 02151

Cindy Gonzalez 1yr

Section 8 Voucher Appeal decision

Dear Jalissa White,

My name is Charlina Mitchell and I am writing you to apologize for Not being able to mail my recertification packet back to Cindy Gonzalez in the amount of time that was required of me!

 I am humbly asking if you can please reinstate my section 8 voucher! I have had an unfortunate amount of pain every day since I had a motor vehicle accident while I was 8 months pregnant with my son! A car ran its red light and T-boned me 50 mph and spent my SUV in a circle and I hit the metal pole that the streetlights hang on! I've tried my hardest to get relief of the pain not knowing how severe it has become! I currently switched hospitals so I can find the right specialist that can help me find relief to the suffering from this chronic pain! I have had to allergic reactions to medications and had two procedures on my back and still Don't have the relief needed to get my life back on track for me and my children's sake!

I am asking you to please allow me the chance to continue to have my housing with Revere Housing so that I can continue to work on healing and trying my best to raise my 3 children to the best of my ability with now the help of Faulkner BWH Hospital referring me to the proper specialist and helping me enroll in PCA services that can help me try to get back to some form of normalcy!

I first obtained a voucher from Revere Housing for My 3 siblings my child and I! I became a parent of 4 children at the price of my 1st son's birth! So, I raised them to the Adults they are now and took care of my mom until she just passed away from rehabilitation neglect! I would have never thought that after all I endured that I would end up in this position with my children trying to raise them to be productive citizens! I am once again apologizing for my lateness and not being able to send paperwork off when I completed it on April 29th...I had one of the allergic reactions around that time and was scheduled for my back procedure! Please forgive me and I will try my hardest to make sure this doesn't happen again.

Thank you 🙏

Charlina Mitchell
9783178644
Chynalene@gmail.com

# EXHIBIT D



me  Apr 28, 2022
to BCruz@revereha.com

Hi Barbara, I am emailing you to let you know that I am currently without a phone due to my screen blacking out a few days ago....But I have a tablet that I am using to email....Just wanted to let you know I just recertified with DTA for my Kids welfare assistance...they are mailing me income letter...And I just received notice Monday that they are stopping my now 18 year old ssi benefits because he turned 18...after finally reaching someone today..I have to go tomorrow to update and let them know he is still in school and hasn't graduated yet...so as soon as I get the updated letters of income I will send you all documents...

I was also wondering if I can receive the paperwork so I can move out this house as soon as possible...I've been looking for places which has been difficult with my back and with me having to have my son re evaluated due to the lead poison...and the fact that almost every apartment I look at is not deleaded...which is very frustrating because I do not want to end up in this position again with the lead and no one caring about the effect it has on my child and my life! Thank you very much and if you need to reach me sooner

My son has a phone and you can call his number if u need me sooner
Demetrius Gooden 857-294-4758

Sent from Yahoo Mail on Android

Case 1:23-cv-13124-MJJ   Document 1-1   Filed 12/18/23   Page 27

# EXHIBIT E

Case 1:23-cv-13124-MJJ   Document 1-1   Filed 12/18/23   Page 30 of 76

**Mass General Brigham**
Brigham and Women's Faulkner Hospital

Faulkner Community Physicians at Hyde Park
1337 HYDE PARK AVE
HYDE PARK MA 02136
Dept Phone # 617-364-9850
Dept Fax #: 617-361-3663

July 7, 2023

Patient: **Charlina Mitchell**
MR Number: **10471165**
Date of Birth: **8/7/1979**

To Whom it May Concern:

The above-captioned patient has been under my care for the past year for several medical problems including chronic lower back pain in the setting of lumbar disc disease and spinal stenosis as well as chronic anxiety and depression. It is my medical opinion that her chronic behavioral and physical health conditions have significantly interfered with her ability to meet certain deadlines in terms of housing. Despite aggressive outpatient treatment at the Brigham pain clinic, we have not been able to adequately control her symptoms to allow her to meet the physical demands put upon her at this time. Her behavioral and mental health issues also interfere with her ability to follow through on meeting deadlines by diminishing and distracting her focus and attention to these matters..

Please contact me if you have any questions regarding this patient.

Sincerely,

Victor A. Ferzoco, MD

# EXHIBIT F



D&V/MainSail

<u>GRIEVANCE HEARING DECISION</u>

AGENCY: REVERE HOUSING AUTHORITY
PARTICIPANT: Charlina Mitchell
HEARING DATE: August 10, 2023
LOCATION: Remote hearing held via audio video conferencing

HEARING OFFICER: Cindy White Overton

IN ATTENDANCE: Charlina Mitchell, Participant; Cindy Gonzalez, Case Worker, RHA; Julissa White, Director of Leased Housing Management, RHA;

Ms. White Overton opened the hearing with brief instruction as to how the hearing would be conducted, explaining that the agency would give their presentation, and the Participant would then present their side as well as have an opportunity to question the agency representative. The agency would then have the opportunity to question the Participant on their presentation. Ms. White Overton explained that she could at times interrupt either party for clarification and/or additional information regarding statements, evidence or documents presented.

Ms. White Overton then swore in all parties present and began the hearing.

Case 1:23-cv-13114-MJJ   Document 1-1   Fi... Ms. White Overton reviewed the Termination correspondence and determined that the Participant had been properly noticed. All documents were accepted without objection.

## PROCEDURAL HISTORY:

3/2020 Ms. Charlina Mitchell begins Section 8/HCV participation through Revere Housing Authority
4/1/2023 RHA issues Notice of Annual Recertification (eff 7/1/2023). 5/1/2023 deadline. No response
5/2/2023 RHA issues 2nd Notice for Recertification documentation. Deadline 5/15/2023. No response
5/16/2023 RHA issues 3rd and final Notice (and calls) for Recert documentation, deadline 5/24/2023. No response
5/30/2023 RHA issues email regarding failure to respond to recertification requests resulting in termination
5/30/2023 RHA issues Notice of Intent to Terminate for failure to respond to Recertification

6/12/2023 RHA calls Ms. Mitchell's brother (emergency contact) and then Ms. Mitchell at new number, speaks for short time. Ms. Mitchell says her paperwork is in the mail. No documentation received after 7 days.
6/21/2023 RHA issues Notice of Termination of HCV Participation and Assistance
7/5/2023 RHA receives incomplete documentation from Ms. Mitchell
7/6/2023 RHA calls Ms. Mitchell re: incomplete documentation; subsidy terminated for lack of request for hearing
7/11/2023 RHA receives medical note
7/17/2023 No response to termination from Ms. Mitchell
7/17/2023 4:42 PM Ms. Mitchel submits request for hearing and copy of medical note
7/17/2023 Landlord emails RHA re: NTQ served on 6/28/2023. Ms. Mitchell in arrears of $8,914 as of 7/1/23
7/24/2023 Landlord submits copy of NTQ and current rent roll
8/1/2023 Landlord emails; complaint and summons to be served that week. Overdue rent now $11,664
8/4/2023 RHA issues Notice of Scheduled Remote Hearing for 8/10/2023
8/10/2023 Remote Hearing held

### STATEMENT OF FACTS:

1. Ms. Mitchell and household have been a Section 8/HCV program participants through Revere Housing Authority since March 2020. Household includes one adult child and 2 minors.

2. Ms. Julissa White testified on behalf of Revere Housing Authority and stated that the agency had repeatedly notified Ms. Mitchell of her upcoming annual recertification without response. Ms. Mitchell violated HCV requirements by repeatedly failing to provide required documentation necessary for annual recertification. Documentation submitted as evidence: 3 notices, Intent to terminate, notice of termination.

3. Ms. White stated that the agency issued an Intent to Terminate and a Notice of Termination after still not receiving a response from Ms. Mitchell. Ms. Mitchell did not respond to those notices and did not request a hearing.

4. Supporting documentation: Ms. White provided documentation that indicated RHA issued multiple notices to remind Ms. Mitchell that her required annual recertification documentation was due. This documentation indicated exactly which documents were outstanding. Evidence indicates RHA made phone calls and emailed Ms. Mitchell but received no response. On 6/12/2023 RHA contacted Ms. Mitchell's brother (emergency contact) regarding the unsuccessful attempts to reach Ms. Mitchell. He provided RHA with a new phone number. RHA reached Ms. Mitchell at the new number, at which time Ms. Mitchell stated she had already put the outstanding documentation in the mail. Seven days later, the documentation had not been received.

5. Ms. Gonzalez testified that Ms. Mitchell is currently being evicted from the subsidized unit. At this time she owes the landlord $11,664 in overdue rent. (as of 8/1/2023) Documentation was submitted to RHA by landlord.

6. Ms. Mitchell testified that she didn't know how to begin. She said she wasn't aware that they (RHA) were keeping records of all this stuff. She said she's been having communication issues with phones. No documentation to support this statement was provided.

7. Ms. Mitchell said she couldn't reach out because of the phone issues. She said she'd had hospital visits and allergic reaction and that mentally, physical and emotionally, she is a mess. She said she can't pull it together but is trying to.

8. Ms. Mitchell provided a medical note. The provider stated that they have treated Ms. Mitchell for the past year. The note said that despite aggressive outpatient treatment they have not been able to adequately control Ms. Mitchell's symptoms to allow her to meet the physical demands put upon her at this time

9. Ms. White stated that this is a repeated non-compliance. Ms. Mitchell failed to provided documentation for recertification by the deadlines last year as well, although they were able to complete the recertification a week before the effective date

Case 1:23-cv-13124-MJJ   Document 1-1   Filed

## APPLICABLE LAW:

RHA- Administrative Policy -
HUD 24 CFR 982.552(a) Termiantion of Assistance for family's failure to act. Failure to provide the information that the Housing Authorty determines is necessary for annual re-examination.
HUD 24 CFR 982.551(a) (b) (h) 3 Direct violation of the Obligation of the Family under the program regulations

## STATEMENT OF CREDIBILITY:

Ms. White's testimony was found to be truthful and accurate, and was supported by documentation.
Ms. Mitchell was forthcoming but provided conflicting testimony.

## APPLICATION OF ALL EVIDENCE:

All evidence was applicable to the law and regulations as stated and presented.

## DECISION:

It is the determination of the hearing officer that based on HCV program requirements, HUD regulation and RHA policies, and after review of all evidence, the right of the RHA to terminate assistance be **upheld**. The preponderance of evidence indicates that Ms. Mitchell repeatedly failed to provide required documentation by deadlines, failed to respond to mail, email and phone calls from RHA and failed to consistently pay rent resulting in an arrearage of $11,664 to the landlord, all in violation of HCV requirements. It is noted that Ms. Mitchell is currently being evicted for violations of the lease (non-payment of rent), and that she failed to update contact information as required by HUD regulation.

Ms. Mitchell has testified that she didn't realize anyone was keeping records of all the issues, but that she has health issues that have prevented her from complying with the requirements of the lease and HCV program. While HUD does not hold physical or mental health issues against a participant, they must be able to live independently within regulation and requirements, with the assistance of services or treatment. Medical documentation submitted by Ms. Mitchell indicates that it is her medical provider's opinion that despite aggressive outpatient treatment they have not been able to adequately control Ms. Mitchell's symptoms to allow her to meeting the physical demands put upon her at this time. The letter also stated that Ms. Mitchell's behavioral and mental health issues also interfere with her ability to follow through on meeting deadlines by diminishing and distracting her focus and attention to these matters. Neither Ms. Mitchells' testimony or the medical documentation indicted there would be a cure to the existing violations or reason to believe their will be improvement in this ongoing situation.

Revere Housing Authority has met the burden of proof that program requirements and HUD regulations and RHA policy was followed appropriately

All mitigating and extenuating circumstances were considered, including the seriousness of the case, the extent of participation or culpability of individual family members and the effects of denial or termination of assistance on other family members who were not involved in the failure.

Date of Decision: August 28, 2023

CINDY WHITE OVERTON
CERTIFIED HEARING OFFICER

This decision shall not constitute a waiver of, nor affect in any manner whatever, any rights the Complainant may have to trial or judicial review through the court system which may thereafter be brought in this matter.

D&V MainSail – A Housing Resource Partnership
P.O. Box 3571 South Attleboro, MA 02703   508.643.4496
info@dvmainsail.com

# EXHIBIT G

Case 1:23-cv-13124-MJJ   Document 1-1   Filed 12/18/23   Page 36 of 76

# 3O DAY NOTICE TO VACATE

Date: June 26, 2023

To: Charlina Mitchell _____ & All other Occupants

_____

_____

It being my intention to terminate your tenancy, you are hereby notified to quit and deliver up at the expiration of that month of your tenancy which shall begin next after this date, the premises now held by you as my tenant, namely:

620 River Street _____, Apartment # (if applicable) 3 _____

*(Street Address)*

Mattapan _____, MA __, 02126 __.

*(City)*      *(State)*    *(Zip)*

together with any other space appurtenant thereto.

This is not a judicial document. By Law, a court is the final authority in every eviction and if you believe you are entitled to remain as my tenant, you or your lawyer may present your case in court. Also, you must continue to pay your rent for use and occupancy until you leave. Any such payment shall not cancel or affect this notice.

HEREOF FAIL NOT, or I shall gain authority from the appropriate Court of Law to evict you from the same.

Ross Wendell _____

Landlord / Property Manager

Phone Number: 617-297-7619 _____

Date: June 26, 2023 _____

34

# EXHIBIT H

For Court Use Only:

**Commonwealth of Massachusetts**
**ELECTRONIC SUMMARY PROCESS (EVICTION) SUMMONS AND COMPLAINT**

TO: DEFENDANT(S)/TENANT(S)/OCCUPANT(S): Charlina Mitchell
ADDRESS: 520 River St #3           CITY/TOWN: Mattapan           ZIP: 02126
EMAIL: chynalene@yahoo.com           TELEPHONE: 978-317-8644

**YOU WILL BE SERVED WITH A NOTICE OF THE DATE, TIME AND MANNER OF YOUR HEARING WHEN IT IS SCHEDULED BY THE COURT.**

You are hereby summoned to appear at a hearing before a Judge of the Court to defend against the complaint of:
PLAINTIFF/LANDLORD/LESSOR/OWNER:
Ross Wendell
of STREET: 22 Wedgemere Rd           CITY/TOWN: Medford           ZIP: 02155

that you occupy the premises at 520 River St #3, Mattapan, MA 02126
being within the judicial district of this Court, unlawfully and against the right of said Plaintiff/Landlord/Owner
because: Termination of lease per HUD Section 8 Tenancy Addendum due to termination of Section 8 Rental
Assistance by Revere Housing Authority on June 21, 2023 with 30-day notice to quit served June 28, 2023.
and further, that $11,664.00 rent is owed according to the following account:

ACCOUNT ANNEXED (itemize)

| | |
|---|---|
| $123 Dec 2020 | |
| $197/mon Jan 2021 - May 2021 | Ross Wendell |
| $172 Jun 2021 | Printed Name of Plaintiff or Attorney |
| $177/mon Jul 2021 - Jun 2022 | |
| $230/mon Jul 2022 - Jun 2023 | Signature of Plaintiff or Attorney |
| $2750/mon Jul 2023 - Aug 2023 | 22 Wedgemere Rd, Medford, MA 02155 |
| | Address of Plaintiff or Attorney |

ross.wendell@gmail.com
Email of Plaintiff or Attorney

617-297-7619          N/A
Telephone Number      BBO#

**NOTICE TO DEFENDANT**

Case 1:23-cv-13124-MJJ   Document 1-1   Filed

**FOR INFORMATION ABOUT EMERGENCY RENTAL AND MORTGAGE ASSISTANCE:**
Please visit: www.mass.gov/applying-for-rental-assistance-in-massachusetts-to-avoid-eviction or call 211 for assistance.

To the Sheriff of our several counties, or their Deputies, or any constable of any City or Town within said Commonwealth, Greetings: We command you to summon the within named defendant(s)/tenant(s)/occupant(s) to appear as herein ordered.
WITNESS:

/s/ *Joseph E. Kelleher*
First Justice

/s/ *Alex G. Valderrama*
Clerk Magistrate

Service by: _____
Entry Date by: _____
Trial Date: To Be Determined by the Court



**IMPORTANT NOTICE TO ALL PARTIES**
If you need a free interpreter or reasonable accommodations, please call the Court's Clerk's Office. For information about the Lawyer for the Day Program, Tenancy Preservation Program, or other services that may help both parties with their case, please go to:
https://www.mass.gov/guides/housing-court-resources

**IMPORTANT NOTICE TO PLAINTIFF/LANDLORD/LESSOR/OWNER:** Have the Officer complete and return the below return notice. Service must be made on each defendant(s) not later than the seventh day and not earlier than the thirtieth day before the Monday entry date. This form must be filed in Court no later than the close of business on the scheduled Monday entry date. In appropriate cases, proper evidence of notice to quit must be provided to this Court upon the filing of this Complaint. A P.O. box will not be accepted as an address for the Plaintiff

## Officer's Return

_____, ss                    Date: _____

City/Town: _____

By virtue of this Writ, I this day served the within-named each defendant/tenant/occupant, and summonsed him/her as herein

directed, by giving in hand to _____

or leaving it at the last and usual place of abode at _____

A copy of this summons was mailed first class to each defendant/tenant/occupant at the address on: _____

Fees for Service

| | | |
|---|---|---|
| Service | $_____ | Signature of Officer |
| Copy/Attest | $_____ | |
| Travel | $_____ | |
| Use of Car | $_____ | Printed Name of Officer |
| Mailing | $_____ | |
| | | |
| TOTAL | $_____ | Address of Officer |
| | | |
| | | Telephone Number of Officer |

**IMPORTANT NOTICE TO EACH DEFENDANT/TENANT/OCCUPANT:** When this case is filed with the Court, you will be served with a notice of the date, time and manner of your hearing when it is scheduled by the court. If you do not receive notice please contact the Court's Clerk's Office at (617) 788-8485.

You (or your attorney) must participate in all Court events to present your defense. You (or your attorney) must also file a written Answer to this Complaint. An Answer is your response stating the reason(s) why you should not be evicted and may include any claim(s) you have against the Plaintiff. A Summary Process Answer Form is available on the Housing Court website at www.mass.gov/hd/housing-court-forms and in the Clerk's Office.

You must file (or file, serve, or mail) your Answer with the Court Clerk's Office and serve (deliver or mail) a copy on the Plaintiff (or Plaintiff's Attorney) at the address shown on this summons. The Court's notice about the court event will also include the deadline by which the Answer must be received by the Court's Clerk's Office and received by the Plaintiff (or the Plaintiff's Attorney).

Case 1:23-cv-13124-MJJ   Document 1-1   Filed

Page 2 of 2

# EXHIBIT I

Case 1:23-cv-13124-MJJ   Document 1-1   Filed 12/18/23   Page 40 of 76

### 2.3.1 Request for an Accommodation

If an applicant or participant indicates that an exception, change, or adjustment to a rule, policy, practice, or service is needed because of a disability, DHCD or its designee will treat the information as a request for a reasonable accommodation, even if no formal request is made. The applicant or participant does not need to say the words "reasonable accommodation."

The family must explain what type of accommodation is needed to provide the person with the disability full access to DHCD's programs and services.

If the need for the accommodation is not readily apparent or known to DHCD or its designee, the family must explain the relationship between the requested accommodation and the disability. There must be an identifiable relationship, or nexus, between the requested accommodation and the individual's disability.

Case 1:23-cv-13124-MJJ   Document 1-1   Filed 12/18/23   Page 41 of 76

# EXHIBIT J

Case 1:23-cv-13124-MJJ   Document 1-1   Filed 12/18/23   Page 42 of 76

### 16.2.11 Recording of the Hearing

DHCD's designee will record and maintain an audio recording of all informal hearings. The designee may determine how to make the recording, but it must be possible to make a transcript from the recording, if necessary.

Case 1:23-cv-13124-MJJ   Document 1-1   Filed 12/18/23   Page 43 of 76

SUFFOLK COUNTY, SS            EASTERN DIVISION
                                      CIVIL ACTION No.

|  |  |
|---|---|
| CHARLINA MITCHELL, PLAINTIFF | |
| vs. | PLAINTIFF'S APPLICATION FOR PRELIMINARY INJUNCTION |
| REVERE HOUSING AUTHORITY, DEFENDANT | |

The Plaintiff, Charlina Mitchell ("Ms. Mitchell") moves that this Court issue a preliminary injunction requiring the Defendant, Revere Housing Authority ("RHA") to make subsidy payments on Ms. Mitchell's behalf for any prior months in which the RHA did not so do, and continuing until the Court hears and decides the merits of this action.

As her reasons, Ms. Mitchell states that:

1. Pursuant to M.G.L. c. 249, § 4; M.G.L. c. 151B § 4; 42 U.S.C. § 1983; and 42 U.S.C. § 3604, she has filed a civil complaint seeking judicial review of the RHA's decision terminating her Section 8 Voucher;

2. Her civil complaint is likely to succeed on the merits;

3. She will suffer irreparable harm if preliminary injunctive relief sought here is denied; and

4. Any harm the RHA may suffer if preliminary injunctive relief sought here is granted is far less than the harm Ms. Mitchell would suffer if the relief she seeks is denied.

# FACTUAL BACKGROUND

As is set forth in Ms. Mitchell's complaint, this is an action challenging the termination of the Plaintiff, Charlina Mitchell's ("Ms. Mitchell"), participation in the Section 8 Housing Choice Voucher Program ("Voucher Program") administered by the Revere Housing Authority (the "RHA").

5. Ms. Mitchell resides at 620 River Street, Apartment #3, Mattapan, Massachusetts 02126 (the "Premises") and has been a participant in the Voucher Program administered by RHA since on or around 2007.

6. Ms. Mitchell resides in the Premises with her children: Demetrius Gooden (19) ("Demetrius"), Kenneth Gooden (7), and Alan Gooden (4).

7. On or about May 30, 2023, Ms. Mitchell received from RHA a notice of Proposed Termination of her Section 8 Housing Voucher ("Voucher"). A copy of this Notice of Proposed Termination is attached hereto as Exhibit B.

8. As grounds for its proposed termination of her Voucher, RHA cited Ms. Mitchell's failure to provide certain information necessary for the annual recertification of the Voucher.

## Disability and Request for Reasonable Accommodation

9. Ms. Mitchell is a person with disabilities, including chronic lower back pain in the setting of lumbar disc disease and spinal stenosis, as well as chronic anxiety and depression.

10. Ms. Mitchell is under the care of Dr. Victor A. Ferzoco ("Dr. Ferzoco") at Faulkner Community Physicians at Hyde Park. She is currently undergoing aggressive outpatient treatment at the Brigham Pain Clinic.

11. Ms. Mitchell has recently undergone two procedures to try and resolve the chronic lower back pain she suffers from, but in Dr. Ferzoco's opinion, the procedures have not been

able to adequately control her symptoms to meet the physical demands put on her at this time (<u>Exhibit E</u>). She attends physical therapy for her back pain.

12. Dr. Ferzoco has prescribed Ms. Mitchell anti-depressants to alleviate her chronic anxiety and depression. She was referred to and has met with a psychiatrist, Dr. Ahmed Makhlouf, to keep an eye on symptoms stemming from her anxiety and depression.

13. As a result of these disabilities, Ms. Mitchell experiences the following limitations on major life activities: walking, sitting down for extended periods of time, bending down, standing up, picking things up, taking care of her children, traveling, as well as experiences diminished focus and attention. Her diminished focus and attention, as well as her anxiety and depression result in an inability to meet deadlines. Because of her disabilities, she is in debilitating pain every single day. This pain forces her to pay people to help her with simple tasks such as moving furniture because she is unable to do it herself.

14. In multiple conversations with RHA, Ms. Mitchell provided information that formed the basis for a request of reasonable accommodation, including: On or around July 11, 2023, Ms. Mitchell sent RHA a medical note from her doctor, stating: "it is my medical opinion that her chronic behavioral and physical health conditions have significantly interfered with her ability to

meet certain deadlines in terms of housing" (<u>Exhibit E</u>). On July 14, 2023, Ms. Mitchell sent Ms. Gonzalez and Julissa White a letter requesting an appeal of the termination of her Voucher. In the letter, Ms. Mitchell stated, "I have had an unfortunate amount of pain every day since I had a motor vehicle accident while I was 8 months pregnant with my son…I've tried my hardest to get relief of the pain not knowing how severe it has become" (<u>Exhibit A</u>). She said that her medical issues led to her untimely submission of the recertification paperwork, and that, "I have had allergic reactions to medications and had two procedures on my back and still don't have the

relief needed to get my life back on track for me and my children's sake!" (Exhibit A). Finally, on August 10, 2023, during the informal hearing, Ms. Mitchell experienced extreme anxiety and was under major stress. During the hearing, she told the Ms. White Overton that "mentally, physically, and emotionally, I am a mess." She also told Ms. White Overton that she was "trying to pull it together" (Exhibit F).

15. The RHA failed to respond to any of these requests for accommodation and did not engage in any interactive process with her as required by section 2-II.C of the RHA's Administrative Plan. A copy of section 2-II.C of the RHA's Administrative Plan is attached hereto as Exhibit G.

16. Ms. Mitchell requests reasonable accommodation of a disability in connection with the termination of her Voucher. Ms. Mitchell requests a reasonable accommodation because her disability prevented her from complying with the voucher program rules in the following way: Some of the ways Ms. Mitchell's disabilities manifest themselves are through chronic lower back pain in the setting of lumbar disc disease and spinal stenosis as well as chronic anxiety and depression that substantially limits her ability to complete major life activities. When experiencing flare ups of this lower back pain, she is unable to walk around pain-free, sit still for

a prolonged period, bend down, pick up her children, and take public transportation. In the summer of 2023, these symptoms culminated in an inability to timely complete recertification of her Voucher. Because of this constant pain that limits her daily life, she is undergoing treatment at Faulkner Community Physicians at Hyde Park and has undergone two medical procedures on her back. While the first procedure on March 1, 2023, seemed to help ease her pain, after the second procedure on May 23, 2023, she experienced more intense pain for weeks following the procedure. During this time, the pain was so debilitating that she could barely get out of bed to

get her young son dressed in the morning. When she was struggling with this intense pain after the second procedure, was precisely the time that RHA was trying to contact her about recertifying her Voucher.

17. RHA was aware of Ms. Mitchell's disability and her negative reaction to the second procedure. Cindy Gonzalez spoke to Ms. Mitchell on the telephone on June 12, 2023, regarding the tardiness of her recertification paperwork. During this phone call, Ms. Mitchell informed Cindy Gonzalez that she was recovering from an intense negative reaction to a medical procedure but would send the recertification documents as soon as she could. Ms. Mitchell sent the recertification documents to RHA when her intense back pain began to subside, and she regained some normalcy.

<u>Termination of the Section 8 Voucher at the Housing Authority</u>

18. RHA proposed to terminate the Voucher on or about May 30, 2023 <u>(Exhibit B).</u>

19. On June 21, 2023, RHA issued another letter to Ms. Mitchell, informing her that her Voucher would be terminating on July 1, 2023. Ms. Mitchell sent the recertification paperwork to RHA on or around July 5, 2023.

20. Ms. Mitchell was unaware that RHA was struggling to contact her during the
recertification period because she had been dealing with various telephone issues since April of 2022 until August of 2023. These phone issues materialized in a cracked phone screen which rendered her unable to see who called her, thus forcing her to miss calls. At some point, her phone stopped working altogether. She then had to switch her SIM card into her son's phone.

21. Ms. Mitchell informed RHA on multiple occasions that she was having trouble with her phone and provided them with people to contact if they could not reach her. These occasions include: On April 28, 2022, Ms. Mitchell emailed her RHA caseworker at the time, Barbara

Cruz, to inform her that she was having phone troubles and directed her to contact her son if she could not get ahold of Ms. Mitchell. A copy of the email Ms. Mitchell sent to Barbara Cruz regarding her telephone issues is attached hereto as Exhibit D. On her 2023 recertification paperwork, Ms. Mitchell wrote her brother's phone number on her recertification paperwork in case she could not be reached.

22. On or around August 7, 2023, Ms. Mitchell was gifted a new phone.

23. On or around July 6, 2023, after submitting the recertification documents, Ms. Mitchell received an email from Cindy Gonzalez confirming that RHA had received the recertification paperwork, but it was incomplete. Cindy Gonzalez wrote that Ms. Mitchell needed to send a letter appealing the termination of her Voucher. A copy of the email sent by Cindy Gonzalez to Ms. Mitchell is attached hereto as Exhibit C.

24. On or around July 14, 2023, in response to this letter, Ms. Mitchell sent Cindy Gonzalez and Julissa White, the Director of Leased Housing Management for RHA, a letter (Exhibit A) requesting an appeal of the termination of her Voucher. In the letter, Ms. Mitchell stated, "I have had an unfortunate amount of pain every day since I had a motor vehicle accident while I was 8 months pregnant with my son…I've tried my hardest to get relief of the pain not knowing how severe it has become" (Exhibit A). She said that her medical issues led to her untimely submission of the recertification paperwork, and that, "I have had allergic reactions to medications and had two procedures on my back and still don't have the relief needed to get my life back on track for me and my children's sake!" (Exhibit A).

25. The RHA ignored this request for reasonable accommodation.

26. On August 10, 2023, RHA held a hearing on the proposed termination of Ms. Mitchell's Voucher.

Case 1:23-cv-13124-MJJ   Document 1-1   Filed 12/18/23   Page 49 of 76

27. Despite the requirement in section 16.2.11 of the Department of Housing and Community Development's Administrative Plan, that informal hearings be recorded, Ms. Mitchell's hearing was not recorded. A copy of section 16.2.11 of the DHCD's Administrative Plan is attached hereto as <u>Exhibit H.</u>

28. Ms. Mitchell was not represented by counsel or anyone else at the informal hearing.

29. Ms. Mitchell attended the hearing on the proposed termination and opposed the termination of her Voucher. Cindy Gonzalez and Julissa White also testified at the hearing.

30. The only piece of evidence provided by Ms. Mitchell at the hearing was the letter from her doctor. (<u>Exhibit E</u>).

31. At the hearing, the evidence offered by RHA in support of the allegations that formed the basis for the proposed Section 8 termination was insufficient to uphold termination.

32. RHA issued a written decision upholding the proposed termination of her Voucher. The decision was signed by Cindy White Overton, a Certified Hearing Officer.

33. On or around August 28, 2023, Ms. Mitchell received a copy of the written decision upholding the proposed termination of the Voucher. It is attached hereto as <u>Exhibit F.</u>

<u>Mitigating Circumstances</u>

34. Ms. Mitchell has been a Section 8 participant for 16 years without any previous serious violations.

35. Ms. Mitchell is responsible for the care of young children, who live with the Participant in the Premises. Two of the three children are school age.

36. If Ms. Mitchell's Section 8 rental assistance is terminated, Ms. Mitchell and her children will become homeless, which would cause the family irreparable harm and significant hardship.

- -      7

37. Ms. Mitchell has a disability, and being forced to move from the home would cause hardship because her physical and mental health would suffer because Ms. Mitchell would no longer be able to continue receiving treatment for her disability while homeless.

38. Ms. Mitchell has a disability and, as a result of this disability, was unable to prevent the alleged conduct on which the proposed Section 8 termination is based.

39. Ms. Mitchell's son and member of the household, Demetrius Gooden, has disabilities that include learning delays and asthma, and being forced to move from the home would cause him undue hardship.

## LEGAL FRAMEWORK

The Section 8 Housing Choice Voucher Program is governed by 42 U.S.C. § 1437f(o) and 24 C.F.R. Part 982. The program allocates federal funding to local Public Housing Agencies ("PHAs"), who use the funding to subsidize individual units of rental housing on the private market on behalf of eligible low-income families. Participating families typically pay no more than thirty to forty percent of their monthly adjusted income in rent for the private market unit, while the PHA pays the difference between the family's portion and the contract rent for the premises.

Federal regulations establish the exclusive grounds for which a PHA may terminate a family's Section 8 rental subsidy, which are set forth in 24 C.F.R, §§ 982.551–982.553. Many of the grounds for terminating Section 8 assistance enumerated in these regulations are discretionary and not mandatory, including in cases where the PHA is alleging criminal activity, failure to permit reasonable access for inspections, failure to act as described in § 982.552 or § 982.553, failure to provide the PHA with information regarding changes in income or household composition, or serious or repeated violations of the participant's lease. *Compare* 24 C.F.R.

- - 8

§ 982.552(a)(1) (providing a broad range of circumstances in which a PHA "may" terminate assistance to a participating family), *with* 24 C.F.R. § 982.552(b) (listing five circumstances under which the PHA has a "requirement" to terminate assistance).

In all discretionary termination cases, the PHA retains the flexibility under 24 C.F.R. § 982.552(c)(2)(i) to consider "all relevant circumstances," including the seriousness of the case, the extent of participation of household members in the incident giving rise to termination, mitigating circumstances related to a disability, the effect that termination would have on the remaining family members, in determining whether to continue the family's participation in the program or whether imposing the extreme sanction of termination is warranted, and if the family includes a person with disabilities, the PHA decision concerning such action is subject to consideration of reasonable accommodation. In all cases, under the regulations, the PHA's termination decision is expressly "subject to" consideration of any requests for reasonable accommodation made by participants with disabilities. 24 C.F.R. § 982.552(c)(2)(iv).

If a PHA does intend to terminate a family's Section 8 rental subsidy, it must do so in accordance with the procedural protections established in 24 C.F.R. § 982.555, which include providing written notice to the participant that includes information about the grounds for the

proposed termination, the opportunity for a hearing with an impartial hearing officer, and the issuance of a written decision following the hearing. The written decision must, at a minimum, contain findings of fact with respect to the participant family's individual circumstances, and indicate both that the hearing officer was aware of his or her ability to exercise discretion and whether or not the officer chose "to exercise that discretion in favor of mitigating the penalty . . . in a particular case." *Carter v. Lynn Hous. Auth.*, 450 Mass. 626, 636 (2008).  If the hearing officer's decision is not clear enough regarding factual findings or the exercise of

- - 9

discretion, a remand may be required. *See Costa v. Fall River Hous. Auth.*, 453 Mass. 614, 629-632 (2009).

A Housing Authority's decision to terminate Section 8 assistance may be reviewed by this Court through an action in the nature of certiorari pursuant to M.G.L. c. 249 § 4. *See, e.g., Figgs v. Bos. Hous. Auth.*, 469 Mass. 354, 361 (2014) (discussing standard of review for claims in the nature of certiorari in the Section 8 termination context). A Housing Authority, if federally assisted like RHA, is governed by the antidiscrimination prohibitions of 42 U.S.C. § 3604(f). *Boston Hous. Auth. v. Bridgewaters*, 452 Mass. 833, 851 n.11 (2009). RHA is also governed by M.G.L. c. 151B. To the extent that the PHA violated the federal statutory or constitutional rights of the program participant, the decision is also reviewable under 42 U.S.C. § 1983. *See, e.g., Costa v. Fall River Hous. Auth.*, 453 Mass. 614 (2009); *Gammons v. Mass. Dep't of Hous. & Cmty. Dev.*, 502 F. Supp. 2d 161 (D. Mass. 2007).

## <u>STANDARD FOR PRELIMINARY INJUNCTIVE RELIEF</u>

In considering the Participant's request for preliminary injunctive relief, the court must evaluate: (a) the irreparable injury that the Participant will suffer if the injunction is denied; (b) how the harm the Participant would experience compares to the injury the Housing Authority may suffer if the injunction is granted; and (c) the Participant's likelihood of success on the merits. *See Town of Brookline v. Goldstein,* 388 Mass. 443 (1983) (citing *Commonwealth v. Cnty. of Suffolk*, 383 Mass. 286 (1981)); *Packaging Industries v. Cheney*, 380 Mass. 609, 616-617 (1980). The Participant need only demonstrate a "substantial probability of success" to merit preliminary injunctive relief from this Court. *Packaging Industries*, 380 Mass. at 617 n.12.

A. <u>Irreparable Injury</u>

It is clear that Ms. Mitchell and her children will suffer irreparable injury if injunctive

Case 1:23-cv-13124-MJJ  Document 1-1  Filed 12/18/23  Page 53 of 76

relief is not granted in this case. The loss of subsidized housing constitutes irreparable injury justifying injunctive relief. *See Jackson v. Jacobs*, 971 F. Supp. 560, 565 (N.D. Ga. 1997). If RHA is allowed to proceed with termination of Ms. Mitchell's Section 8 benefits, the subsidy that currently enables Ms. Mitchell to afford the rent payments for her home will cease. Ending the household's subsidy now will also act to exclude the family from affordable housing going forward, as termination from the Section 8 program can form the basis for denial of an application to receive Section 8 assistance in the future. *See* 24 C.F.R. § 982.552(c)(1)(iii). Additionally:

40. Ms. Mitchell cannot afford the full market rent of his or her current apartment, currently $2750 per month. Ms. Mitchell is currently facing eviction from her home because of the termination of her Section 8 voucher.

41. If Ms. Mitchell were to be evicted from her home, Ms. Mitchell and her children would become homeless. Homelessness has long been recognized as being precisely the kind of severe harm that warrants issuance of injunctive relief. *See Sinisgallo v. Town of Islip Hous. Auth.*, 865 F. Supp. 2d 307, 328 (E.D.N.Y. 2012) (observing that, "as a general matter, courts have held that the 'threat of eviction and the realistic prospect of homelessness constitute a threat of irreparable harm and satisfy the first prong of the test for preliminary injunctive relief'"); *Mass. Coalition for the Homeless v. Sec'y of Human Svcs.*, 400 Mass. 806, 821 (1987); *Mitchell v. U.S. Dept. of Hous. & Urb. Dev.*, 569 F. Supp. 701, 705 (N.D. Cal. 1983).

42. Without this Section 8 subsidy, Ms. Mitchell cannot afford to relocate to other housing.

43. Ms. Mitchell currently has school-age children in her household, whose ability to continue their education at their current school would be negatively impacted if the family were

- - 11

made homeless or forced to relocate. *See, e.g., Lampkin v. D.C.*, 879 F. Supp. 116, 126 (D.D.C. 1995) ("Homelessness has a profound influence on a child's ability to succeed at school.").

44. Demetrius is a person and member of the household with a disability that substantially interferes with major life activities. Due to his learning delays, he has trouble with focusing and comprehension. Due to his asthma, he struggles with breathing during physical activities.

45. Ms. Mitchell also faces irreparable injury if injunctive relief is not granted because she is faced with a physical disability that substantially interferes with major life activities. She is currently working with a physician to treat this disability and the chronic pain it causes her but will be unable to continue treatment if she becomes homeless. Her pain, anxiety, and depression will worsen if she becomes homeless because of the stress she would face.

Furthermore, Ms. Mitchell faces a type of injury that cannot later be vindicated at a hearing on the merits if preliminary injunctive relief is denied. *See Packing Industries*, 380 Mass. at 616. If this Court were later to determine that RHA erred in terminating Ms. Mitchell's Section 8 voucher, Ms. Mitchell could become homeless in the meantime. This is a case "where the status quo should be maintained to minimize the harm that final relief cannot redress . . . by creating or preserving, in so far as possible, a state of affairs that after the full trial, a meaningful decision may be rendered for either party." *Loyal Order of Moose, Inc., Yarmouth Lodge #2270 v. Bd. of Health of Yarmouth*, 439 Mass. 597, 603 (2003) (internal quotations omitted).

B. Balancing of Harms

The nature and extent of the irreparable harm faced by Ms. Mitchell if injunctive relief is not granted in this case strongly urges a finding that the balance of harms in this case weighs in Ms. Mitchell's favor. Indeed, here, as in *Jackson*, "[i]t would be difficult to argue that the modest

Case 1:23-cv-13124-MJJ   Document 1-1   Filed 12/18/23   Page 55 of 76

amount of money and administrative inconvenience a preliminary injunction would cost the Defendants outweighs the injury" suffered by the Participant, where the Participant's alternative to the preliminary injunctive relief is forced homelessness. 971 F. Supp. at 565. *See also Goldberg v. Kelly*, 397 U.S. 254, 266 (1970) (finding that recipient's interest in receiving continued assistance, coupled with state's interest in not terminating erroneously, outweighs state's fiscal and administrative concerns).

C. <u>Likelihood of Success on Merits</u>

Ms. Mitchell can demonstrate a likelihood of success on the merits of his or her claims that the RHA's process and decision in terminating her Section 8 voucher were flawed for the reasons stated in Section II regarding Legal Framework, above, and the Verified Complaint filed herewith.

D. <u>Issuance of Injunction Not Contrary to Public Interest</u>

There is a significant public interest in guaranteeing that those in financial need are not unreasonably terminated from public assistance benefits. *See Goldberg v. Kelly*, 397 U.S. 254, 254 (1970); *Basham v. Freda,* 805 F. Supp. 930, 932 (M.D. Fla. 1992). The Section 8 program was specifically devised "for the purpose of aiding low-income families in obtaining a decent

place to live." 42 U.S.C. § 1437f(a). Granting injunctive relief in this case would affirmatively further that goal by preventing the eviction of a low-income household from their home.

**<u>CONCLUSION</u>**

For the foregoing reasons, Ms. Mitchell requests that this honorable Court grant a preliminary injunction requiring RHA to make subsidy payments on Ms. Mitchell's behalf for

any prior months in which RHA did not so do, and continuing until the Court hears and decides the merits of this action.

Dated: October 27, 2023

Respectfully submitted,
CHARLINA MITCHELL,
By her attorneys,

/s/ *Alan Minuskin*

_____
Alan Minuskin
Supervising Attorney
BBO # 348980
minuskin@bc.edu

/s/ *Sophia Bonadeo*

_____
Sophia Bonadeo (SJC Rule 3:03)
Boston College Legal Services LAB
885 Centre Street
Newton, MA 02459
617-552-0248 / bonadeo@bc.edu

# EXHIBIT A

Case 1:23-cv-13124-MJJ   Document 1-1   Filed 12/18/23   Page 58 of 76



Channa Mitchell
6206 Vier Street #3
Dorchester, MA 02126
Mattapan

Jalisa White
82 Coolege Street
Revere, Ma. 02151
Revere Housing Authority

Case 1:23-cv-13124-MJJ   Document 1-1   Filed 12/19/23   Page 59 of 76

JUL 14 2023
MATTAPAN, MA 02126
USPS

02151329563 C020

ULGENt

JUL 17 PM4:42

16

Jalissa white

82 Coolege street revere ma 02151

Cindy Gonzalez 1yr

Section 8 Voucher Appeal decision

Dear Jalissa White,

My name is Charlina Mitchell and I am writing you to apologize for Not being able to mail my recertification packet back to Cindy Gonzalez in the amount of time that was required of me!

I am humbly asking if you can please reinstate my section 8 voucher! I have had an unfortunate amount of pain every day since I had a motor vehicle accident while I was 8 months pregnant with my son! A car ran its red light and T-boned me 50 mph and spent my SUV in a circle and I hit the metal pole that the streetlights hang on! I've tried my hardest to get relief of the pain not knowing how severe it has become! I currently switched hospitals so I can find the right specialist that can help me find relief to the suffering from this chronic pain! I have had to allergic reactions to medications and had two procedures on my back and still Don't have the relief needed to get my life back on track for me and my children's sake!

I am asking you to please allow me the chance to continue to have my housing with Revere Housing so that I can continue to work on healing and trying my best to raise my 3 children to the best of my ability with now the help of Faulkner BWH Hospital referring me to the proper specialist and helping me enroll in PCA services that can help me try to get back to some form of normalcy!

I first obtained a voucher from Revere Housing for My 3 siblings my child and I! I became a parent of 4 children at the price of my 1st son's birth! So, I raised them to the Adults they are now and took care of my mom until she just passed away from rehabilitation neglect! I would have never thought that after all I endured that I would end up in this position with my children trying to raise them to be productive citizens! I am once again apologizing for my lateness and not being able to send paperwork off when I completed it on April 29th...I had one of the allergic reactions around that time and was scheduled for my back procedure! Please forgive me and I will try my hardest to make sure this doesn't happen again.

Thank you 🙏

Charlina Mitchell
9783178644
Chynalene@gmail.com

17

# EXHIBIT B

**REVERE HOUSING AUTHORITY**

**ANTHONY PERRONE**
Chairman
Labor Representative

**DEAN HARRIS**
Executive Director



**GEORGE M. ANZUONI**
Vice-Chairman
State Appointee

**RICHARD VISCAY**
Treasurer

**FATOU DRAMMEH**
Member

**SECTION 8**
82 COOLEDGE STREET
REVERE, MASSACHUSETTS 02151
TEL: 781-284-1700
FAX: 781-286-8093/781-286-8094
www.reverha.org

May 30, 2023

Charlina Mitchell
620 River Street   Unit: 3
Mattapan, MA 02126

Dear Charlina Mitchell:

This letter is to inform you that a review of your tenant-file indicates that you have failed to comply with the requirements of the Housing Choice Voucher Program.  Specifically, you have failed to respond to your annual recertification letter April 1, 2023.  Letters were also sent to you on May 2, 2023 and May 16, 2023 with no response. Several telephone calls were made to your residence as well.

Consequently, as the result of your failure to comply with the program requirements, your assistance may be terminated.  The decision is based on 24 CFR 982.551(b).  If you wish to appeal this decision, the request must be submitted to this office in writing within seven (7) days from the date of this letter.  Your request should be directed to the undersigned and must clearly state the reason why you did not comply to the requirements of the housing choice voucher program.

Case 1:23-cv-13124-MJJ   Document 1-1   Filed 12/18/23   Page 61 of 76

If your request is not received within the time period indicated above, our decision to terminate your assistance will become final. This does not, however, constitute a waiver of your rights to appropriate judicial proceedings.

Sincerely,

*Cindy Gonzalez*

Section 8 Sr. Leased Housing Coordinator
Cc: Tenant
      Landlord



18

# EXHIBIT C

Case 1:23-cv-13124-MJJ   Document 1-1   Filed 12/18/23   Page 62 of 76

Cindy Gonzalez

From: Cindy Gonzalez
Sent: Thursday, July 6, 2023 1:11 PM
To: chynalene@yahoo.com; Chynalene@gmail.com
Cc: Julissa White
Subject: Termination appeal/Annual recertification
Attachments: Missing Paperwork20230706123418.pdf

HI Charlina Mitchell,

As we spoke today on the phone, I mentioned that I have received your recertification paperwork on July 5, 2023 this is after your recertification effective date and that in order for us to review your paperwork and your case we needed an appeal letter from you since your voucher has been terminated for not responding in a timely manner.

After reviewing what you submitted to us you have provided an incomplete recertification. (Please see attached form of missing documentation).

**The following documents are required to complete your re-certification:**

1. **Termination Appeal Letter**

2. **Demetrius income Verification 4 consecutive Paystubs for Sees Candies INC and offer letter.**

3. **Utility Bill**

4. **Landlord letter or rent receipt**

We had send numerous letter to you and you failed to respond back. I had to contact your brother to get an updated from you and he provided me with your phone number and we spoke on June 12 , 2023 at 10:33am, I informed you that your recert paperwork was overdue and that I needed it ASAP before we decided to terminate. You answered back saying that you have been at the hospital and you were having a hard time getting it back to us and that you had already sent it by mail, because we did not received your paperwork in a timely manner we proceeded with termination of assistance for family's failure to act.

Please provide appeal letter and missing documents as soon as possible.

Any questions you cab reach out to me.

Sincerely,

*Cindy Gonzalez*

Sr.Leased Coordinator
Revere Housing Authority
Dept. Section 8

Revere, Ma 02151
Phone: (781) 284-1700 ext. 228
Fax: (781) 286-8093

1

20

# EXHIBIT D

Case 1:23-cv-13124-MJJ   Document 1-1   Filed 12/18/23   Page 64 of 76



**me** Apr 28, 2022
to BCruz@revereha.com

Hi Barbara, I am emailing you to let you know that I am currently without a phone due to my screen blacking out a few days ago....But I have a tablet that I am using to email....Just wanted to let you know I just recertified with DTA for my Kids welfare assistance...they are mailing me income letter...And I just received notice Monday that they are stopping my now 18 year old ssi benefits because he turned 18...after finally reaching someone today..I have to go tomorrow to update and let them know he is still in school and hasn't graduated yet...so as soon as I get the updated letters of income I will send you all documents...

I was also wondering if I can receive the paperwork so I can move out this house as soon as possible...I've been looking for places which has been difficult with my back and with me having to have my son re evaluated due to the lead poison...and the fact that almost every apartment I look at is not deleaded...which is very frustrating because I do not want to end up in this position again with the lead and no one caring about the effect it has on my child and my life! Thank you very much and if you need to reach me sooner

My son has a phone and you can call his number if u need me sooner
Demetrius Gooden 857-294-4758

Sent from Yahoo Mail on Android

Case 1:23-cv-13124-MJJ   Document 1-1   Filed 12/18/23   Page 65 of 76

# EXHIBIT E

Case 1:23-cv-13124-MJJ   Document 1-1   Filed 12/18/23   Page 66 of 76

**Mass General Brigham**
Brigham and Women's Faulkner Hospital

Faulkner Community Physicians at Hyde Park
1337 HYDE PARK AVE
HYDE PARK MA 02136
Dept Phone # 617-364-9880
Dept Fax #: 617-361-3663

July 7, 2023

Patient:     **Charlina Mitchell**
MR Number: **10471165**
Date of Birth: **8/7/1979**

To Whom it May Concern:

The above-captioned patient has been under my care for the past year for several medical problems including chronic lower back pain in the setting of lumbar disc disease and spinal stenosis as well as chronic anxiety and depression. It is my medical opinion that her chronic behavioral and physical health conditions have significantly interfered with her ability to meet certain deadlines in terms of housing. Despite aggressive outpatient treatment at the Brigham pain clinic, we have not been able to adequately control her symptoms to allow her to meet the physical demands put upon her at this time. Her behavioral and mental health issues also interfere with her ability to follow through on meeting deadlines by diminishing and distracting her focus and attention to these matters..

Please contact me if you have any questions regarding this patient.

Sincerely,

Victor A Ferzoco, MD

# EXHIBIT F

Case 1:23-cv-13124-MJJ   Document 1-1   Filed 12/18/23   Page 68 of 76


**D&V/MainSail**

<u>GRIEVANCE HEARING DECISION</u>

AGENCY: REVERE HOUSING AUTHORITY
PARTICIPANT: Charlina Mitchell
HEARING DATE: August 10, 2023
LOCATION: Remote hearing held via audio video conferencing

HEARING OFFICER: Cindy White Overton

IN ATTENDANCE: Charlina Mitchell, Participant; Cindy Gonzalez, Case Worker, RHA; Julissa White, Director of Leased Housing Management, RHA;

Ms. White Overton opened the hearing with brief instruction as to how the hearing would be conducted, explaining that the agency would give their presentation, and the Participant would then present their side as well as have an opportunity to question the agency representative. The agency would then have the opportunity to question the Participant on their presentation. Ms. White Overton explained that she could at times interrupt either party for clarification and/or additional information regarding statements, evidence or documents presented.

Ms. White Overton then swore in all parties present and began the hearing.

Ms. White Overton reviewed the Termination correspondence and determined that the Participant had been properly noticed. All documents were accepted without objection.

## PROCEDURAL HISTORY:

3/2020 Ms. Charlina Mitchell begins Section 8/HCV participation through Revere Housing Authority
4/1/2023 RHA issues Notice of Annual Recertification (eff 7/1/2023). 5/1/2023 deadline. No response
5/2/2023 RHA issues 2nd Notice for Recertification documentation. Deadline 5/15/2023. No response
5/16/2023 RHA issues 3rd and final Notice (and calls) for Recert documentation, deadline 5/24/2023. No response
5/30/2023 RHA issues email regarding failure to respond to recertification requests resulting in termination
5/30/2023 RHA issues Notice of Intent to Terminate for failure to respond to Recertification

6/12/2023 RHA calls Ms. Mitchell's brother (emergency contact) and then Ms. Mitchell at new number, speaks for short time. Ms. Mitchell says her paperwork is in the mail. No documentation received after 7 days.

6/21/2023 RHA issues Notice of Termination of HCV Participation and Assistance

7/5/2023 RHA receives incomplete documentation from Ms. Mitchell

7/6/2023 RHA calls Ms. Mitchell re: incomplete documentation; subsidy terminated for lack of request for hearing

7/11/2023 RHA receives medical note

7/17/2023 No response to termination from Ms. Mitchell

7/17/2023 4:42 PM Ms. Mitchell submits request for hearing and copy of medical note

7/17/2023 Landlord emails RHA re: NTQ served on 6/28/2023. Ms. Mitchell in arrears of $8,914 as of 7/1/23

7/24/2023 Landlord submits copy of NTQ and current rent roll

8/1/2023 Landlord emails, complaint and summons to be served that week. Overdue rent now $11,664

8/4/2023 RHA issues Notice of Scheduled Remote Hearing for 8/10/2023

8/10/2023 Remote Hearing held

### STATEMENT OF FACTS:

1. Ms. Mitchell and household have been a Section 8/HCV program participants through Revere Housing Authority since March 2020. Household includes one adult child and 2 minors.

2. Ms. Julissa White testified on behalf of Revere Housing Authority and stated that the agency had repeatedly notified Ms. Mitchell of her upcoming required annual recertification without response. Ms. Mitchell violated HCV requirements by repeatedly failing to provide required documentation necessary for annual recertification. Documentation submitted as evidence: 3 notices, intent to terminate, notice of termination.

3. Ms. White stated that the agency issued an Intent to Terminate and a Notice of Termination after still not receiving a response from Ms. Mitchell. Ms. Mitchell did not respond to those notices and did not request a hearing.

4. Supporting documentation: Ms. White provided documentation that indicated RHA issued multiple notices to remind Ms. Mitchell that her required annual recertification documentation was due. This documentation indicated exactly which documents were outstanding. Evidence indicates RHA made phone calls and emailed Ms. Mitchell but received no response. On 6/12/2023 RHA contacted Ms. Mitchell's brother (emergency contact) regarding the unsuccessful attempts to reach Ms. Mitchell. He provided RHA with a new phone number. RHA reached Ms. Mitchell at the new number, at which time Ms. Mitchell stated she had already put the outstanding documentation in the mail. Seven days later, the documentation had not been received.

5. Ms. Gonzalez testified that Ms. Mitchell is currently being evicted from the subsidized unit. At this time she owes the landlord $11,664 in overdue rent. (as of 8/1/2023) Documentation was submitted to RHA by landlord.

6. Ms. Mitchell testified that she didn't know how to begin. She said she wasn't aware that they (RHA) were keeping records of all this stuff. She said she's been having communication issues with phones. No documentation to support this statement was provided.

7. Ms. Mitchell stated she couldn't reach out because of the phone issues. She said she'd had hospital visits and allergic reaction and that mentally, physical and emotionally, she is a mess. She said she can't pull it together but is trying to.

8. Ms. Mitchell provided a medical note. The provider stated that they have treated Ms. Mitchell for the past year. The note said that despite aggressive outpatient treatment they have not been able to adequately control Ms. Mitchell's symptoms to allow her to meet the physical demands put upon her at this time

9. Ms. White stated that this is a repeated non-compliance. Ms. Mitchell failed to provided documentation for recertification by the deadlines last year as well, although they were able to complete the recertification a week before the effective date.

Case 1:23-cv-13124-MJJ   Document 1-1   Filed

## APPLICABLE LAW:

RHA- Administrative Policy -
HUD 24 CFR 982.552(a) Termination of Assistance for family's failure to act. Failure to provide the information that the Housing Authority determines is necessary for annual re-examination.
HUD 24 CFR 982.551(a) (b) (h) 3 Direct violation of the Obligation of the Family under the program regulations

## STATEMENT OF CREDIBILITY:

Ms. White's testimony was found to be truthful and accurate, and was supported by documentation.
Ms. Mitchell was forthcoming but provided conflicting testimony.

## APPLICATION OF ALL EVIDENCE:

All evidence was applicable to the law and regulations as stated and presented.

## DECISION:

It is the determination of the hearing officer that based on HCV program requirements, HUD regulation and RHA policies, and after review of all evidence, the right of the RHA to terminate assistance be upheld. The preponderance of evidence indicates that Ms. Mitchell repeatedly failed to provide required documentation by deadlines, failed to respond to mail, email and phone calls from RHA and failed to consistently pay rent resulting in an arrearage of $11,664 to the landlord, all in violation of HCV requirements. It is noted that Ms. Mitchell is currently being evicted for violations of the lease (non-payment of rent), and that she failed to update contact information as required by HUD regulation.

Ms. Mitchell has testified that she didn't realize anyone was keeping records of all the issues, but that she has health issues that have prevented her from complying with the requirements of the lease and HCV program. While HUD does not hold physical or mental health issues against a participant, they must be able to live independently within regulation and requirements, with the assistance of services or treatment. Medical documentation submitted by Ms. Mitchell indicates that it is her medical provider's opinion that despite aggressive outpatient treatment they have not been able to adequately control Ms. Mitchell's symptoms to allow her to meeting the physical demands put upon her at this time. The letter also stated that Ms. Mitchell's behavioral and mental health issues also interfere with her ability to follow through on meeting deadlines by diminishing and distracting her focus and attention to these matters. Neither Ms. Mitchell's testimony or the medical documentation indicted there would be a cure to the existing violations or reason to believe their will be improvement in this ongoing situation

Revere Housing Authority has met the burden of proof that program requirements and HUD regulations and RHA policy was followed appropriately

All mitigating and extenuating circumstances were considered, including the seriousness of the case, the extent of participation or culpability of individual family members and the effects of denial or termination of assistance on other family members who were not involved in the failure.

Date of Decision: August 28, 2023

_C. White-Overton_

CINDY WHITE OVERTON
CERTIFIED HEARING OFFICER

*This decision shall not constitute a waiver of, nor affect in any manner whatever, any rights the Complainant may have to trial or judicial review through the court system which may thereafter be brought in this matter.*

D&V MainSail – A Housing Resource Partnership
P.O. Box 3571 South Attleboro, MA 02703    508.643.4496
info@dvmainsail.com

# EXHIBIT G

## 2-II.C. REQUEST FOR AN ACCOMMODATION

If an applicant or participant indicates that an exception, change, or adjustment to a rule, policy, practice, or service is needed because of a disability, HUD requires that the PHA treat the information as a request for a reasonable accommodation, even if no formal request is made [Joint Statement of the Departments of HUD and Justice: Reasonable Accommodations under the Fair Housing Act].

The family must explain what type of accommodation is needed to provide the person with the disability full access to the PHA's programs and services.

If the need for the accommodation is not readily apparent or known to the PHA, the family must explain the relationship between the requested accommodation and the disability. There must be an identifiable connection, or nexus, between the requested accommodation and the individual's disability.

> ### RHA Policy
>
> The PHA will encourage the family to make its request in writing using a reasonable accommodation request form. However, the PHA will consider the accommodation any time the family indicates that an accommodation is needed whether or not a formal written request is submitted.

Case 1:23-cv-13124-MJJ   Document 1-1   Filed 12/18/23   Page 74 of 76

# EXHIBIT H

Case 1:23-cv-13124-MJJ   Document 1-1   Filed 12/18/23   Page 75 of 76

### 16.2.11 Recording of the Hearing

DHCD's designee will record and maintain an audio recording of all informal hearings. The designee may determine how to make the recording, but it must be possible to make a transcript from the recording, if necessary.

Case 1:23-cv-13124-MJJ   Document 1-1   Filed 12/18/23   Page 76 of 76